SO ORDERED: September 7, 2017.



_____
James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ABBEGAIL LYNN COX, | ) Case No. 16-01346-JMC-7A |
| | ) |
| Debtor. | ) |
| | ) |
| NANCY J. GARGULA, | ) |
| UNITED STATES TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 16-50209 |
| | ) |
| ABBEGAIL LYNN COX, | ) |
| | ) |
| Defendant. | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court for a bench trial on February 8, 2017. Plaintiff Nancy J. Gargula, United States Trustee ("UST"), appeared by counsel Jeannette Eisan Hinshaw.

Defendant Abbegail Lynn Cox ("Debtor") appeared by counsel Joseph L. Mulvey. At the conclusion of the trial, the Court took the matter under advisement.

The Court, having reviewed the evidence presented at the trial, *Defendant's Pre-Trial Brief* filed by Debtor on February 3, 2017 (Docket No. 19), and the other matters of record in this adversary proceeding; having weighed the credibility of the witnesses; having heard the presentations of counsel at the trial; and being otherwise duly advised, now enters the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

### Admissibility of UST's Exhibit 2

During the trial, the Court took under advisement the admissibility of UST's Exhibit 2, a transcript of the 2004 Examination (as defined below). UST offered UST's Exhibit 2 "for the purpose of demonstrating that [Debtor] did not say anything about advice of counsel at the 2004 exam", to "impeach her defense", and to "shed light on her defense of advice of counsel." Debtor objected on the grounds that "it is hearsay and that the impeachment basis as an exception to hearsay is improper because there is nothing in the 2004 examination that impeaches anything that she said here today."

The Court now rules that UST's Exhibit 2 is admitted solely for purposes of attempting to impeach Debtor's credibility.

### Findings of Fact

1. Debtor is a single mother of two minor children who works full-time and does not receive child support.

2. In February 2016, Debtor received her 2015 federal and/or state income tax refunds. From those refunds, Debtor placed approximately $5,000 (the "Funds") in a lockbox in

her home.  Debtor intended to use the Funds to buy a house from her landlord, Martha Reed of Reed Properties in Shelbyville, Indiana ("Landlord") and believed "with all my heart" that the Funds were "earmarked" for Landlord.

3. On March 2, 2016 (the "Petition Date"), Debtor commenced her chapter 7 bankruptcy case by filing a voluntary petition.  The Funds remained in Debtor's possession on the Petition Date, though the Funds were not disclosed on her bankruptcy schedules (Schedule B, question 16 or question 22) or statement of financial affairs (question 21 or question 23).

4. Debtor's bankruptcy counsel, S. Michele Kramer ("Kramer"), or persons working for Kramer prepared the schedules and statement of financial affairs based on information provided by Debtor.  Debtor performed only a brief review of the schedules and statement of financial affairs before signing them.

5. At the 11 U.S.C. § 341 meeting of creditors (the "341 Meeting") on April 4, 2016, Debtor testified under oath that she gave the Funds to Landlord in mid-March either to pay rent in advance or to buy a house on contract.  By letter dated April 6, 2016, chapter 7 trustee Joseph W. Hammes ("Trustee Hammes") made demand on Landlord for turnover of the Funds.

6. Debtor testified that Kramer and persons working for Kramer knew of the Funds before the schedules were prepared, and that Debtor followed Kramer's advice with respect to disclosure (or non-disclosure, as the case may be) of the Funds.  Debtor testified that Kramer and persons working for Kramer knew of the Funds before the 341 Meeting, but that Kramer did not prepare Debtor in advance of the 341 Meeting, did not advise Debtor what to say at the 341 Meeting and did not attend the 341 Meeting with Debtor.  Kramer testified that Kramer did not know of the Funds until after the 341 Meeting, and that Debtor signed a statement pre-petition

indicating her understanding that cash on hand, money in accounts and tax refunds would have to be turned over to the chapter 7 trustee.[1]

7. On April 12, 2016, Debtor filed an amended Schedule B disclosing the Funds.

8. Beginning on or about April 12, 2016 and concluding on or about July 5, 2016, Debtor paid to Trustee Hammes a total of $4,700 in installments, representing the portion of the Funds demanded by Trustee Hammes, within the timeframe established by Trustee Hammes.

9. Debtor paid Trustee Hammes in full prior to UST's conducting an 11 U.S.C. § 2004 examination of Debtor on July 12, 2016 (the "2004 Examination"). Debtor testified that Kramer advised Debtor to tell the truth at the 2004 Examination.

10. On August 1, 2016, UST filed this adversary proceeding objecting to Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(B) and (a)(4)(A).

## Conclusions of Law

1. Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the judgment of the Court.

*Jurisdiction and Venue*

2. This court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

*Objection to Discharge: § 727(a)(2)(B) and (a)(4)(A)*

5. Section 727 provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless –

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an

---

[1] A copy of such statement was not presented to the Court as evidence.

>officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
>>…
>
>>(B) property of the estate, after the date of the filing of the petition;
>
>>…
>
>>(4) the debtor knowingly and fraudulently, in or in connection with the case –
>
>>>(A) made a false oath or account; … .

6. "Consistent with the 'fresh start' policy underlying the Code, these [§ 727(a)] exceptions to discharge should be construed strictly against the creditor [or Trustee] and liberally in favor of the debtor. It is also important, however, to recognize that a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." *Matter of Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (internal citations omitted). "The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson),* 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (citation omitted).

7. The grounds for denial of discharge under § 727(a) must be established by a preponderance of the evidence. *Peterson v. Scott (In re Scott),* 172 F.3d 959, 966–67 (7th Cir. 1999).

8. "[I]t remains within the discretion of a bankruptcy court to grant a discharge even when grounds for denial of discharge are demonstrated to exist." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002) (*quoting In re Hacker*, 90 B.R. 994, 997 (W.D. Mo. 1987)).

*§ 727(a)(2)(B)*

9. "The purpose of this provision is to deny a discharge to debtors who fail to disclose transactions regarding their assets subsequent to the filing of the bankruptcy petition."

*Richardson v. Clarke (In re Clarke)*, 332 B.R. 865, 871 (Bankr. C.D. Ill. 2005) (*citing In re Wolmer,* 57 B.R. 128 (Bankr. N.D. Ill.1986)).

10. "Concealment … includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known." *Scott*, 172 F.3d at 967 (quoting *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir. 1984)). A "concealment or transfer under § 727(a)(2) may occur even if no creditors are harmed by it. 'Proof of harm is not a required element of a cause of action under Section 727.' " *Id.* at 968 (quotation omitted).

### *§ 727(a)(4)(A)*

11. "The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate." *In re Clarke*, 332 B.R. at 872 (citation omitted).

12. In order to prevail, UST must establish five elements: "(1) [Debtor] made a statement under oath; (2) the statement was false; (3) [Debtor] knew the statement was false; (4) [Debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011) (citation omitted).

> 13. To find the requisite degree of fraudulent intent, the court must find that the debtor knowingly intended to defraud or engaged in such reckless behavior as to justify a finding of fraud. Direct evidence of intent to defraud may not be available. Instead, intent may be inferred from circumstantial evidence or by inference based on a course of conduct. Reckless disregard means "not caring whether some representation is true or false ... ." If a debtor's bankruptcy schedules reflect a "reckless indifference to the truth" then the plaintiff seeking denial of the discharge need not offer any further evidence of fraud.

*Trennepohl v. Neal (In re Neal),* 2009 WL 684793 at *2 (Bankr. S.D. Ind. 2009) (internal citations omitted).

14. "[A] fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition

of the debtor's property.' " *Stamat*, 635 F.3d at 982 (quotation omitted).

15. There is no doubt that UST proved that Debtor had the Funds on the Petition Date and that Debtor did not disclose them on her schedules or during the 341 Meeting. However, whether UST proved that Debtor's failure to disclose was done "with intent to hinder, delay, or defraud a creditor or an officer of the estate" (§ 727(a)(2)(B)) or "knowingly and fraudulently" (§ 727(a)(4)(A)) such that Debtor's discharge should be denied is not as clear.

16. Based solely on the omission of the Funds from the schedules, the Court does not conclude that the requisite intent exists. Debtor and Kramer testified differently as to when Kramer was aware of the Funds, but neither of them is, on the whole, more credible than the other. The Court cannot conclude definitively from the evidence whether (a) Debtor was specific enough in describing the Funds to Kramer (and the use or intended use of the Funds) such that Kramer clearly understood while preparing the schedules that the Funds were then sitting in Debtor's lockbox,[2] and (b) Kramer made a detailed enough inquiry to elicit with specificity what portion of the tax refunds had been spent, what portion remained, and what the tax refunds had been spent for.[3] The Court believes that both Debtor and Kramer would likely disagree – each thinking that she was absolutely clear, but the testimony of both, viewed in the totality, leads the Court to conclude that there was a misunderstanding or miscommunication between Debtor and Kramer.

17. UST has not shown that the omission of the Funds from the schedules was more than a misunderstanding or miscommunication. Accordingly, UST has not met her burden to

---

[2] For example, when Trustee Hammes asked Debtor during the 341 Meeting about whether Kramer knew of the money given to Landlord, Debtor testified: "I told her I *was going to pay my landlord*." (UST's Ex. 1, 9:2-5.) While this appears to be a true statement of Debtor's intended use of the Funds, it may not have clearly conveyed to Kramer that Debtor would have $5,000 sitting in a lockbox on the Petition Date.

[3] For example, Kramer testified that it was not until after the 341 Meeting that Debtor explained to Kramer in detail what Debtor did with her tax refunds.

prove that Debtor's failure to disclose was done with the intent necessary to deny Debtor's discharge pursuant to § 727(a)(2)(B) or (a)(4)(A).

18. Debtor's untruthful testimony at the 341 Meeting appears to be based on the following exchanges:

| | |
|---|---|
| Trustee Hammes: | Between February 10th and February 22nd, roughly ten days before you filed bankruptcy, you withdrew more than $7,100 from your bank account. What did you do with that money? |
| Debtor: | Most of it went on stuff for my landlord, I gave her money, and then the rest were filing fees. |
| Trustee Hammes: | What – how much did you give her? |
| Debtor: | 5,000. |
| Trustee Hammes: | Why? |
| Debtor: | I'm either going to pay the rent in advance or buy a house. |
| Trustee Hammes: | How much of that 5,000 was in advance? |
| Debtor: | The 5,000 itself. |
| Trustee Hammes: | Okay. So it wasn't for rent that was due? |
| Debtor: | No. |

…

| | |
|---|---|
| Trustee Hammes: | And explain again why you gave them $5,000. |
| Debtor: | Because I'm going to be buying a house from them. |

…

| | |
|---|---|
| Trustee Hammes: | So why did you give them $5,000? |
| Debtor: | So they could have it and I wouldn't spend it. |

…

| | |
|---|---|
| Trustee Hammes: | Okay. So when did you give them the $4,900? |

| | |
|---|---|
| Debtor: | When I went and looked at the house a couple weeks ago. |
| Trustee Hammes: | Couple of weeks ago? |
| Debtor: | Yeah. |
| Trustee Hammes: | Do you remember when that would have been? |
| Debtor: | I don't know in my head, but it was in mid-March. |
| Trustee Hammes: | And so you had that cash from the 22nd until mid-March? |
| Debtor: | February – yeah. |
| Trustee Hammes: | Right. You got the money February 22nd, I believe that's accurate, then in mid-March you paid Reed $4,900 plus a hundred dollars? Yes or no, ma'am? |
| Debtor: | Yes. |

(UST's Ex. 1, 6:25-10:15.)

19.  It is untrue that Debtor gave the Funds to Landlord. When viewing these exchanges in the context of all evidence presented at trial, Debtor's statements at the 341 Meeting appear to be her *intended* use of the Funds, not the actual use of the Funds as of the Petition Date or the date Debtor testified. Debtor explained the untruthful testimony as follows: (a) Debtor was very nervous and under pressure at the 341 Meeting; (2) Debtor tried to give the Funds to Landlord, but Landlord told her to wait; (3) that the Funds were Landlord's because Landlord promised Debtor a house in return; and (4) Kramer told Debtor during meetings leading up to the Petition Date to testify that Debtor had spent it.

20.  The Court concludes that Debtor was under stress at the 341 Meeting and was uncertain what she was to do. She should have told the truth about the Funds, but the Court sees the misunderstanding or miscommunication between Debtor and Kramer as leading to confusion

on Debtor's part at the 341 Meeting, and Kramer was not present at the 341 Meeting to advise Debtor or clear up any misunderstanding or miscommunication.

21. Therefore, the Court concludes that UST has not met her burden to prove that Debtor's false testimony at the 341 Meeting was given with the intent necessary to deny Debtor's discharge pursuant to § 727(a)(2)(B) or (a)(4)(A).

22. Even if UST had met her burden, the Court would exercise its discretion to find that Debtor's discharge should not be denied pursuant to *Connors*, 283 F.3d at 901. The factors in favor of granting a discharge – Debtor is an unmarried mother of two in straightened circumstances; Debtor and Kramer miscommunicated or misunderstood each other regarding the Funds; Debtor's prompt filing of an amended Schedule B disclosing the Funds; and Debtor's paying the $4,700 demanded by Trustee Hammes without resistance – far outweigh the harm to Debtor of denying her discharge and any benefit the bankruptcy system would recognize by doing so.

## Decision

Based on the foregoing, the Court hereby concludes that Debtor should be granted a discharge in her bankruptcy case. The Court will enter judgment in favor of Debtor and against UST consistent with these findings of fact and conclusions of law contemporaneously herewith.

# # #